```
1              IN THE UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
2                        TAMPA DIVISION

3

4   UNITED STATES OF AMERICA,        )
                                     )
5                  Plaintiff,        )
                                     )
6                                    ) Case No.
           vs.                       ) 8:22-CR-00190-MSS-SPF-3
7                                    )
                                     )
8   HERIBERTO CASTILLO,              )
                                     )
9                  Defendant.        )

10

11
    _____
12

                       SENTENCING HEARING
13        BEFORE THE HONORABLE MARY S. SCRIVEN
              UNITED STATES DISTRICT JUDGE
14
                       JULY 11, 2023
15                      10:54 A.M.
                      TAMPA, FLORIDA
16  _____

17

18

19

20

21        Proceedings recorded by mechanical stenography,
    transcript produced using computer-aided transcription.
22  _____

23             DAVID J. COLLIER, RMR, CRR
               FEDERAL OFFICIAL COURT REPORTER
24            801 NORTH FLORIDA AVENUE, 7TH FLOOR
                   TAMPA, FLORIDA  33602
25
```

1    **APPEARANCES:**

2

3    **FOR THE GOVERNMENT:**

4

5            Michael Kenneth

6            United States Attorney's Office

7            400 North Tampa Street, Suite 3200

8            Tampa, Florida  33602-4798

9            (813) 274-6600

10

11

12    **FOR THE DEFENDANT HERIBERTO CASTILLO:**

13

14            Frank W. McDermott

15            McDermott Law Firm, P.A.

16            10010 Seminole Boulevard

17            Seminole, Florida  33710

18            (727) 367-1080

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2                    - - - o0o - - -

 3           COURTROOM DEPUTY:  Court calls Case Number

 4   8:22-CR-190-MSS-SPF, the United States of America versus

 5   Heriberto Castillo.

 6           Counsel, please state your appearances for the

 7   record, starting with counsel for the Government.

 8           MR. KENNETH:  Good morning, Your Honor.

 9   Michael Kenneth for the United States.

10           THE COURT:  Good morning.

11           MR. McDERMOTT:  Good morning, Your Honor.  Frank

12   McDermott on behalf of Heriberto Castillo, the defendant.

13           THE COURT:  Good morning.

14           Please swear the defendant.

15           COURTROOM DEPUTY:  Please rise and raise your right

16   hand.

17           Do you solemnly swear or affirm, under penalty of

18   perjury, that the statements you shall give in these

19   proceedings shall be the truth, the whole truth and nothing but

20   the truth?

21           THE DEFENDANT:  Yes.

22           COURTROOM DEPUTY:  Could you please state your name

23   for the record.

24           THE DEFENDANT:  Heriberto Castillo.

25           COURTROOM DEPUTY:  Thank you.
```

1          THE COURT:  Mr. Castillo, you're under oath, sir.

2    You have to give truthful answers.  If you give false answers

3    or you make false statements, you face penalties of perjury,

4    false statement and obstruction.  Do you understand that?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  At the same time, it is not my purpose to

7    induce you to give false answers or mislead you, so if you

8    don't understand something that I'm saying to you or if you

9    need to speak with your lawyer, ask for clarification or ask

10   for a chance to speak with counsel.  Do you understand that?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Are there any preliminary issues to

13   address before we proceed, from the Government or the defense?

14         MR. KENNETH:  I don't believe so, Your Honor.

15         MR. McDERMOTT:  None from defense, Your Honor.

16         THE COURT:  All right.  Mr. Castillo, November the

17   28th, 2022 you pled guilty to Count One of the indictment,

18   which charged you with conspiracy to distribute and possess

19   with intent to distribute 5 kilograms or more of cocaine and

20   40 grams or more of fentanyl, in violation of 21 U.S.C. 846 and

21   841 et seq., and Count Three, which charged you with possession

22   with intent to distribute and distribution of 5 kilograms or

23   more of cocaine, in violation of 21 U.S.C. Section 841(a)(1),

24   (b)(1)(A)(ii) and Title 18 United States Code Section 2.

25         The Court has already adjudicated you guilty based

1  upon the plea that you entered in front of the magistrate

2  judge, and now it is the stage of the proceedings where it's my

3  job to decide what your sentence will be.  I make that decision

4  by speaking to you, your lawyer, and counsel for the

5  Government, as well as reviewing the materials submitted in

6  advance of this hearing, including the presentence report and

7  the parties' respective sentencing memos.

8         Has the defense had an opportunity to review the

9  pretrial sentencing report?

10        MR. McDERMOTT:  Yes, Your Honor, I've reviewed it a

11 number of times myself, I also reviewed it with my client

12 previously at Citrus County, and then this morning I was able

13 to meet with him at the marshal's office and we went over it

14 again.

15        THE COURT:  Any objection to its factual accuracy?

16        MR. McDERMOTT:  No, ma'am.

17        THE COURT:  Any objection to the guideline

18 calculation?

19        MR. McDERMOTT:  No, ma'am.

20        THE COURT:  Has the Government had a similar

21 opportunity?

22        MR. KENNETH:  Yes, Your Honor.

23        THE COURT:  Any objection to the factual statements

24 in the report?

25        MR. KENNETH:  No, Your Honor.

1          THE COURT:  Any objection to the guideline

2    calculations?

3          MR. KENNETH:  Not to the guideline calculations if

4    the minimum doesn't apply.

5          THE COURT:  The Government agrees that the minimum

6    does not apply?

7          MR. KENNETH:  I'm sorry.  I did not speak clearly

8    enough.  Other than the dispute over whether the minimum

9    applies, we do not have any disagreement with the guideline

10   calculation in the presentence report.

11         THE COURT:  So the Government objects to the

12   guideline calculations because the Government objects as to

13   whether the mandatory minimum applies in the case?

14         MR. KENNETH:  Yes, Your Honor.

15         THE COURT:  Do you wish to be heard further on that

16   question, and do you have any legal authority to support the

17   Government's position?  And what do I do with *Garcon* if I want

18   to accept the Government's position, especially the principle

19   that resulted in the en banc *Garcon* decision?

20         MR. KENNETH:  Your Honor, as we -- as we described in

21   the sentencing memo that we filed, the Eleventh Circuit did

22   discuss this exact issue that we're dealing with here where

23   someone has a three point violent offense but no two point

24   violent offense, and they went right up to the line of making a

25   decision on that and saying this isn't before us, but they did

1  point to the Ninth Circuit that did also address this same

2  issue in an opinion that was substantially similar to *Garcon*

3  about what the result would be, the overall result regarding

4  safety valve, and I think both opinions, you know, address the

5  point of applying essentially the absurdity doctrine,

6  Your Honor, that unlike the general issue in *Garcon* over

7  whether or not safety valve should be applied more -- or

8  interpreted to apply more or less strictly, there's no rational

9  basis that we can imagine where Congress would have intended

10 that somebody who had committed a 15 year -- a felony worthy of

11 a 15 year sentence would be eligible for safety valve release

12 but someone who had committed one worthy of only six months

13 would not be, and we would ask the Court -- although the

14 Eleventh Circuit has not spoken to it, so there is nothing

15 binding on this Court, we believe that the Eleventh Circuit --

16 and we think the Ninth Circuit analysis is persuasive that the

17 right result here and the one that the Eleventh Circuit would

18 ultimately reach would be to say that a three point violent

19 offense satisfies the requirement for a two point violent

20 offense under the safety valve provision to avoid that

21 absurd -- what the Ninth Circuit described, I think, as an

22 absurd result.

23         THE COURT:  I think the Eleventh was of the opinion

24 that the conjunctive didn't make any sense either but felt

25 constrained by standard language usage to do what Congress said

1    and not what Congress must have intended, and so why would we

2    deviate from that principle in evaluating whether two points is

3    really at least two points in the context of statutory

4    construction?

5         MR. KENNETH:  The reason that we can distinguish

6    these two circumstances, Your Honor, is that it is -- it may or

7    may not have been what Congress intended, but as they -- they

8    made clear that if it produces a potentially rational result

9    then it's something that we have to abide by, and they cited,

10   for example, to the *Bostock* opinion dealing with protecting gay

11   and transgender individuals under Title VII, they didn't think

12   Congress meant to protect them but that's what the language

13   said and so we have to go by the language, because the

14   difference between those circumstances and what we're asking

15   about today with what we describe as an absurd result is that

16   there is no rational basis that you could imagine a Congress

17   saying we do not want -- we want 2 point violent offenders to

18   be excluded from safety valve release but 3 point violent

19   offenders not to be excluded from safety valve release.

20        And so, on the other hand, the conjunctive

21   interpretation of the safety valve may have produced a result

22   contrary to what Congress intended, it may not have, but we

23   could all imagine a Congress getting together and saying safety

24   valve release should be a little more generous, whereas we

25   can't imagine a Congress getting together and saying somebody

1    with a lengthy violent sentence can get safety valve release

2    but somebody with a short violent sentence cannot, and so that

3    is where -- the absurdity doctrine is a very high bar, but we

4    think we clear it here.

5         THE COURT:  Well, the Fourth disagrees with you and

6    the Eighth agrees with you and the Eleventh hasn't spoken, and

7    I think the Supreme Court has granted cert, so it's not as

8    clear as one might imagine just sitting in a room trying to

9    contemplate what Congress might have thought versus what

10   Congress in fact said, and until the Eleventh says Congress

11   said something it didn't mean to say or until the Eleventh says

12   we should interject where we believe we know what Congress

13   really meant but it said something else, I'm not sure that the

14   Court at the trial level should be interposing a view, because

15   the Eleventh, as you said, got all the way up to the line and

16   backed away, and it then decided that something it thought was

17   peculiar was still directed by plain language, and so it seems

18   to me that somebody needs to go to Congress and have Congress

19   take a look at what it said and what it really meant and did it

20   understand what it was saying, and until that happens we follow

21   what Congress said, and two is two and not three, and so the

22   Court declines to amend the statute in the way that the

23   Government is requesting, though I don't disagree that if

24   I were sentencing two people back-to-back that I really would

25   feel comfortable in them being back in the transport van

1  explaining what I did based upon this oddly drafted statute.

2  So I am going to find that the defendant is eligible for safety

3  valve because he doesn't have a two point violent offense.

4          MR. KENNETH:  Your Honor, may I just put one thing on

5  the record?

6          THE COURT:  Yes, sir.

7          MR. KENNETH:  Just that in an abundance of caution we

8  just want to state for the record that we also -- the

9  Government also disagrees with the Eleventh Circuit's

10 interpretation of *Garcon*, just to preserve that for appeal.

11 Obviously the Court needs to follow *Garcon* here, but I just

12 wanted to say it just in case.

13         THE COURT:  So noted.

14         So the Court overrules the Government's objection to

15 the presentence report.  No one is objecting to the factual

16 statement, so there was a challenge to the quantity of drugs,

17 that has been dropped, because I think it's also in the

18 presentence report, the 4 kilos, I think.

19         MR. McDERMOTT:  I think it is, Your Honor, I just --

20 we -- I mean, we wanted to interpose that objection because he

21 wasn't there with I think it was 4.9 kilos.  I don't know that

22 it changes the guidelines though.

23         THE COURT:  And he pled to the conspiracy?

24         MR. McDERMOTT:  Yes, and he did enter a plea to the

25 conspiracy.

1          THE COURT:  The Court overrules the objection to that

2     portion of the facts, but as counsel said, it doesn't change

3     the guideline calculations, and so the Court adopts the factual

4     statements over one of the objections of the defense and it

5     adopts the guideline calculations over one objection from the

6     Government and determines that the guidelines are as follows.

7          The defendant has a total offense level of 25, a

8     Criminal History Category IV, there's an 84 to 105 month term

9     of imprisonment recommended, a two to five year period of

10    supervised release, restitution is not applicable, the fine

11    range is 20,000 to $20 million, and there's a $200 special

12    assessment.

13         Do you wish to be heard further in mitigation, and

14    does your client wish to allocute, which is his right?

15         MR. McDERMOTT:  So, Your Honor, Frank McDermott on

16    behalf of Mr. Castillo.  I don't think he wants to allocute

17    today.  I think in the PSR it does talk about his remorse and

18    how he got to where he was, but I don't think he wants to make

19    a statement today and would rely on the PSR and his assertions

20    that he feels remorse over this and obviously has a very

21    significant drug problem, and I would like to make some further

22    argument.  Do you want me to go ahead and make those now?

23         THE COURT:  Yes, sir.

24         MR. McDERMOTT:  Yes, ma'am.

25         So, pretty well laid out, and I know the Court has

1    the sentencing memorandum, but essentially this is a

2    middle-aged man, I guess you would say, he has run afoul of the

3    law before, he's obviously got some significant health problems

4    that are laid out in the PSR, starting with a stroke at a very

5    young age and then culminating with the problems he's had with

6    diabetes, with other issues, the high blood pressure, and on

7    into most recently, as placed in the PSR, his significant

8    health problems while he's being incarcerated.  His time while

9    incarcerated might be different from someone who is much much

10   healthier in that he spent a lot of time there in the clinic.

11          Certainly the minor role is anticipated in there,

12   where if that's his guidelines, I kind of had thought,

13   you know, if you look at his significant substance abuse and

14   you varied a couple of levels, like two levels below those

15   84 months, and you looked at his upbringing, with the

16   abandonment of his father and the poor conditions, and you

17   varied it two levels from that, and then you looked at his

18   health issues and said you vary two more levels for that,

19   certainly those would make reasonable sense at least in our

20   position that he does have those issues, his health, his

21   substance abuse, his poor upbringing, and certainly there is

22   room for the Court to vary.

23          We're going to ask that the Court recommend he be

24   sentenced to FCI in Fort Worth.  That is a medical unit.  They

25   have RDAP there.  We would ask that the Court recommend RDAP.

1    I mean, his PSR is replete with references to how early he got

2    into the drugs, how often he used the drugs, and up until this

3    point -- and, you know, it was in one of the discovery --

4    I gleaned in looking at some of the reports that he was high on

5    cocaine when he came down to Florida and was participating, and

6    it was a money pickup, it was a supposed money pickup, it was

7    pretty clear that he had been using, had been up all night, and

8    it was just an unfortunate situation.  It doesn't look like

9    he's had that treatment before, although he did a prior Federal

10   sentence, doesn't look as though he's -- he certainly hasn't

11   participated in the RDAP program and certainly hasn't had any

12   significant substance abuse.

13          So we're asking the Court to consider varying from

14   the guidelines, recommending FCI Fort Worth, recommending him

15   for RDAP.  I know he requested in his PSR interview considering

16   a recommendation for training in a vocational skill such as

17   HVAC, we would ask for that as well, Your Honor, and it's

18   unfortunate that he's here today.

19          He certainly cooperated, I think that's what helped

20   him allow the Government in the plea agreement to withdraw the

21   851 notice, he did not get a substantial assistance motion

22   filed by the Court, but he sincerely before the Court wanted to

23   enter a plea as soon as he could, he has done so, and he is

24   here before the Court to be sentenced.

25          Thank you, Your Honor.

```
 1                    THE COURT:  Thank you.

 2           Is there a low end agreement in the plea agreement?

 3                    MR. McDERMOTT:  Pardon me?

 4                    THE COURT:  Is there a low end agreement in the

 5   plea agreement?

 6                    MR. McDERMOTT:  I don't believe so.  I think the

 7   Government was in agreement to -- where they are seeking a

 8   guidelines sentence.

 9                    MR. KENNETH:  I believe that's correct, Your Honor.

10                    MR. McDERMOTT:  So not a low end.

11                    THE COURT:  All right.

12           Let me hear from you, sir.

13                    MR. KENNETH:  Thank you, Your Honor.

14           Briefly, Your Honor, you acknowledged certain of the

15   issues that Mr. Castillo has had, but in looking at the 3553

16   factors, particularly promoting respect for the law and

17   providing adequate deterrence and protecting the public,

18   unfortunately Mr. Castillo has not demonstrated a respect for

19   the law even though he previously received a sentence around

20   the low end of the guidelines that are before you of 84 months,

21   or at least at one point it was 84 months, in a sentence

22   related to a very similar conspiracy to distribute a

23   substantial amount of cocaine.  So in looking at those factors,

24   we don't believe that, looking at the totality of the

25   circumstances, we should be departing below the guideline
```

1    range.

2          We look at the nature and circumstances of the

3    offense.   Obviously he was -- we believe minor role is

4    appropriate, but he was very involved at various stages of this

5    and he understood what he was doing and he certainly understood

6    the potential consequences given his prior Federal sentence,

7    and so for those reasons, Your Honor, looking at all the 3553

8    factors, we would urge the Court to sentence Mr. Castillo in

9    the guidelines.

10         THE COURT:  Anything else from the defense?

11         MR. McDERMOTT:  Nothing, Your Honor.

12         One thing I did place in my memo, at least I believe

13   I did, is that he's shown himself to be an exemplary person in

14   his familial relationships, he's friends with his -- looks like

15   he's maintained friendships with most of his siblings and is

16   contact with them, and he has maintained employment as well,

17   and so I ask the Court to take those into consideration as

18   well.  Legal employment.  Some legal employment.

19         THE COURT:  Sir, would you please stand.

20         The Court has considered the parties' arguments,

21   I have reviewed the background and history of this case and the

22   background and history of this defendant, and pursuant to

23   Title 18, United States Code, Section 3551 and 3553, it is the

24   judgment of this Court that this defendant, Heriberto Castillo,

25   is hereby committed to the custody of the Bureau of Prisons to

1    be incarcerated for a term of 84 months.  This term consists of

2    84 months as to Count One and as to Count Three, to run

3    concurrently.

4          Upon release from prison you'll serve a five year

5    term of supervision, this is five years as to Count One and

6    Three, to run concurrently, complying with the mandatory and

7    standard conditions adopted by this Court.  In addition,

8    certain special conditions.

9          You may be seated.

10          You will participate in a substance abuse program,

11    outpatient or inpatient, as directed by the Office of

12    Probation, following the Office's instructions as to payment

13    based upon your ability to pay.  You will be subject to

14    mandatory drug testing as part of that program.

15          You will submit to a search of your person,

16    residence, place of business, storage unit, computer or vehicle

17    conducted by Probation at a reasonable time and in a reasonable

18    manner based upon a reasonable suspicion of contraband or

19    evidence of a violation of conditions of release.  If you live

20    with someone they must agree to have their place subject to

21    search.

22          You're a convicted felon so you must cooperate in the

23    collection of DNA as directed.

24          You will refrain from any unlawful use of a

25    controlled substance, submitting to drug treatment --

1    I'm sorry, drug testing as part of your supervision, up to 104

2    tests per year.

3             Based upon your financial status, the Court waives

4    the imposition of a fine.

5             Is there a forfeiture order in this case?

6             MR. KENNETH:  I don't believe so, Your Honor.

7             THE COURT:  You will pay the $200 special assessment,

8    which is statutorily mandated and due immediately.

9             Having considered all of the sentencing factors of

10   18 U.S.C. 3553(a)(1) through (7), the Court finds that this

11   sentence is greater than necessary to comply with the statutory

12   purposes of sentencing.

13            To the extent that this sentence is imposed

14   consistent with the guidelines and rejecting the defense

15   request for a variance, it is so to take into account the

16   defendant's criminal history, his prior drug offense, as

17   offsetting of some of the factors that the defense artfully

18   argued to the Court.  I think in other circumstances this

19   defendant might have been entitled to some variance, but the

20   Court cannot bring itself to grant a variance in this case in

21   light of this defendant's criminal history with this same type

22   of offense, for which he was given what appears to be a liberal

23   grant of leniency the first time around and then he just

24   returned to this same conduct.

25            In addition, the 851 was removed and the Court did

1    not sentence the defendant within the statutory mandatory

2    minimum in light of the circumstances of this statute.  I think

3    an argument could have been made for a greater sentence within

4    the guideline range than the Court imposed, and so to the

5    extent that this sentence is at the low end, it does take into

6    account some of the factors raised by the defense.

7          The Court has accepted the plea because I am

8    satisfied that accepting it will not undermine the statutory

9    purposes of sentencing, and the Court intends to reflect the

10   seriousness of this behavior, especially the quantity of drugs

11   involved.

12         The Court would grant the defendant's request that he

13   be sent to Fort Worth, to the extent that BOP can accommodate

14   that.

15         Mr. Castillo, I can only make the recommendation,

16   I cannot guarantee you that placement by the Bureau of Prisons.

17   The Court does believe his medical status would warrant it and

18   would urge the BOP to consider it.

19         The Court would recommend him to the RDAP program if

20   he qualifies and it's available, and it would recommend the

21   defendant to any vocational training and UNICOR work for which

22   he is eligible.

23         The Court would also direct that the defendant be

24   given credit for all time served since the date of his arrest,

25   which is what date?

1              PROBATION OFFICER:  Your Honor, it was June 22nd,

2     2022.

3              THE COURT:  All right.  Since June 22nd, 2022.

4              The Court having pronounced sentence, does counsel

5     for the defense object to the sentence or the manner in which

6     it was pronounced?

7              MR. McDERMOTT:  No, Your Honor.

8              THE COURT:  Any objection from the Government?

9              MR. KENNETH:  Other than what has already been placed

10    on the record, no, Your Honor.

11             THE COURT:  The defendant is remanded to the custody

12    of the United States Marshal to await designation by the BOP.

13             In your plea agreement, Mr. Castillo, you gave up

14    most of your appellate rights.  That means you can't challenge

15    my sentence or judgment except in a limited way.  If you

16    believe that this sentence implicates any of those limited

17    preservations, you may assert it on appeal.  If you choose to

18    appeal, you must do so within 14 days of the entry of judgment.

19    If you do not appeal, it will be a permanent waiver of any

20    remaining right of appeal you might have preserved.

21             The Government may appeal if it chooses.  If you

22    cannot afford an attorney, one will be appointed for you, and

23    if you cannot pay the filing fee, the clerk of the court will

24    be directed to accept the notice of appeal without a fee

25    because the Court finds that you are indigent.

```
 1              Counsel, please get your client's decision on appeal
 2    in writing so that it cannot later be argued that he asked you
 3    to take an appeal that you didn't file, if that becomes his
 4    decision, and obviously if he chooses to appeal, file a notice
 5    in a timely fashion.
 6              Is there anything further from the Government?
 7              MR. KENNETH:  No, Your Honor.
 8              THE COURT:  From the defense?
 9              MR. McDERMOTT:  Nothing, Your Honor.
10              THE COURT:  From Probation?
11              PROBATION OFFICER:  No, Your Honor.
12              THE COURT:  Thank you.  We're dismissed.
13                         - - - - -
14              (Proceedings concluded at 11:20 a.m.)
15                         - - - - -
16
17
18
19
20
21
22
23
24
25
```

```
 1              C E R T I F I C A T E

 2

 3          This is to certify that the foregoing transcript of

 4    proceedings taken in a sentencing hearing in the United States

 5    District Court is a true and accurate transcript of the

 6    proceedings taken by me in machine shorthand and transcribed by

 7    computer under my supervision, this the 14th day of August,

 8    2023.

 9

10

11                                    /S/ DAVID J. COLLIER

12

13                            DAVID J. COLLIER

14                            OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25
```